**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

SUNDANCE REHABILITATION, )
CORPORATION, )
                                       )
             Plaintiff, )
                                       )
v. ) Case No. 04-3571-CV-S-FJG
                                       )
NEW VISION CARE ASSOCIATES II, INC. )
and C.P. CARE ASSOCIATES, LLC., )
                                       )
             Defendants. )

## ORDER

Currently pending before the Court is plaintiff's Motion for Summary Judgment (Doc. # 46) and defendant's Motion for Summary Judgment (Doc. # 77).

### I. BACKGROUND

SunDance provided therapy services for the residents and patients at Rocky Ridge nursing home. The services were provided in 2001 and 2002. Rocky Ridge then sought Medicare reimbursement for these services. SunDance argues that Rocky Ridge failed to pay SunDance the amounts that it was reimbursed from Medicare. On January 21, 2004, SunDance filed suit against Rocky Ridge and New Vision alleging breach of contract, quantum meruit and suit on account for failure to pay for the therapy services provided. This lawsuit will be referred to as "SunDance I."

The parties entered into a settlement. SunDance agreed to dismiss New Vision because Rocky Ridge represented that New Vision had no involvement in the operation of the nursing home and rather New Vision's only connection was through its ownership and lease of the land and building. Based on these representations, SunDance agreed

to dismiss New Vision. The parties filed a Stipulation of Dismissal and a Joint Motion for Consent Judgment on June18, 2004.  On July 21, 2004, the Court entered a Clerk's Order of Dismissal and dismissed New Vision with prejudice.  On July 22, 2004, the Court entered a Consent Judgment in favor of SunDance and against defendant Rocky Ridge.

On August 2, 2004, Rocky Ridge requested that SunDance forebear enforcing its judgment for ninety days so that Rocky Ridge could restructure its debt and operations. SunDance agreed to forebear collecting on its debt only if Rocky Ridge made monthly payments of $2,500.00 for three months and Rocky Ridge would enter into good faith discussions to establish a payment plan after ninety days had expired.  Rocky Ridge made three payments, however after three months had passed, Rocky Ridge announced that it had shut down its operations and would not make any more payments or engage in any payment plan discussions.  SunDance alleges that after Rocky Ridge shut down, its assets and value as an ongoing business operation were fraudulently transferred to New Vision without consideration.  SunDance argues that New Vision siphoned off Rocky Ridge's assets and business operations without paying any consideration and left Rocky Ridge without any assets to pay its obligations.  SunDance alleges that New Vision took over the business operations, operates the nursing home in the same location and uses the same business name.  On December 22, 2004, after attempts to resolve the dispute failed, SunDance filed suit against New Vision alleging that New Vision was liable under the corporate continuation doctrine for operating the exact same business.  SunDance also alleges that New Vision fraudulently transferred assets.  This suit will be referred to as "SunDance II."  SunDance alleges that in

2

furtherance of the scheme, New Vision and C.P. Care Associates, LLC ("C.P."), through their common owner, Cheryl Parsons, fraudulently transferred the same assets and business operations previously owned by Rocky Ridge and New Vision to C.P. after the SunDance II lawsuit was filed. SunDance alleges that pursuant to the Corporate Continuation doctrine and the Fraudulent Transfers Doctrine, it is entitled to invalidate the fraudulent transfer of assets and/or enforce the Consent Judgment against New Vision and C.P.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler

3

v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

**Corporate Continuation Doctrine**

> "The general rule in Missouri is that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's debts and liabilities." Chemical Design, Inc. v. Am. Standard, Inc., 847 S.W.2d 488, 491 (Mo.Ct.App. 1993). A successor corporation may be liable, however: (1) where the purchaser expressly or impliedly agrees to assume the debts or liabilities of the transferor; (2) where the transaction amounts to a merger or consolidation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently for the purpose of escaping liability for the debts and liabilities of the transferor. ARE Sikeston Ltd. P'ship v. Weslock Nat'l, Inc., 120 F.3d 820, 828 (8th Cir. 1997)(citing Chemical Design, 847 S.W.2d at 491); Brockmann v. O'Neill, 565 S.W.2d 796, 798 (Mo.Ct.App. 1978).

Medicine Shoppe Intern. Inc., 336 F.3d 801, 803 (8th Cir. 2003).

Plaintiff argues that the facts demonstrate that New Vision merely served as the corporate continuation of Rocky Ridge and should be held liable for the debts and obligations owed by its predecessor corporation. In Medicine Shoppe the Court noted that there are five factors which courts consider when determining whether a purchasing corporation is a continuation of the selling corporation, none of which are determinative:

> (1) whether there is common identity of officers, directors and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors and the name of the transferor[;] and (5) whether notice has been given of the transfer to employees or customers. . . . Roper Elec. Co. v. Quality Castings Inc., 60 S.W.3d 708, 711-13 (Mo.Ct.App. 2001), see also, Flotte v. United Claims Inc., 657 S.W.2d 387, 388-89 (Mo.Ct.App. 1983).

Id. at 804.

4

In the instant case, plaintiff argues that Rocky Ridge and New Vision shared identical officers, directors and stockholders. Cheryl Parsons served as president and secretary of both New Vision and Rocky Ridge and George Mathes served as vice-president and treasurer for both entities. Rocky Ridge and New Vision operated the same business, using the same business name and retained the identical work force, supervisor, Administrator, equipment, property and building that Rocky Ridge had previously used. Cheryl Parsons, as the President of Rocky Ridge and New Vision sent a notice to employees and residents of Rocky Ridge Manor, advising them that "[o]n September 1, 2004, you will be employed by New Vision Care Associates II, Inc. There will be no change in the name of the facility and you should experience no change in the general atmosphere or structure of the facility." However, no notice was provided to SunDance until SunDance initiated discussions regarding a payment plan.

Additionally, plaintiff argues that the Court should also enforce the Consent Judgment against C.P. based on the Corporate Continuation Doctrine as well. SunDance argues that after the present lawsuit was filed, New Vision transferred the very same assets, which had previously been owned by Rocky Ridge to a third related entity, C.P. SunDance argues that the same factors identified above, also apply to this transfer. C.P. and New Vision shared a common identity of officers, directors and stockholders in Cheryl Parsons. Rocky Ridge, New Vision and C.P. all operated the same business and C.P. also used the same work force, supervisors, Administrator, equipment, property and building as did New Vision. SunDance argues that C.P. is merely the corporate continuation of New Vision and Rocky Ridge and it is entitled to enforcement of the Consent Judgment.

5

Defendants argue that initially Rocky Ridge was the operator of the nursing home, while New Vision was the owner of the building and equipment and that the relationship was that of a landlord and tenant. However, from September 1, 2004 until December 31, 2004, New Vision operated the nursing home because under a settlement with the IRS, Rocky Ridge was required to discontinue operations.

On January 1, 2005, C.P. became the new Operator of the nursing home via a written lease agreement. New Vision leased the nursing home facility and equipment to CP for a term of ten years. New Vision and C.P. notified the staff, patients and current supply vendors of the change in operator. Defendants argue that New Vision did not transfer any of its assets to C.P. Defendants argue that the corporate continuation doctrine does not apply because New Vision did not acquire Rocky Ridge's assets nor did C.P. acquire the assets of New Vision. Cheryl Parsons states that at the time Rocky Ridge discontinued operations on August 31, 2004, the inventory had a book value of only $6,075.84. She notes that there was no value to the business of Rocky Ridge since the liabilities exceeded the assets as of August 2004. As of August 31, 2004, Ms. Parsons alleges that the value of Rocky Ridge's good will was negative. Any good will of Rocky Ridge was secured by the UCC Financing Statement. She further notes that at all times material to these proceedings, New Vision was the owner of the real property and most of the equipment used in the nursing home. (Parsons Affidavit ¶¶ 25-28). Ms. Parsons states that the supplies that Rocky Ridge left on the premises on August 31, 2004, were deemed abandoned and became the property of New Vision pursuant to the lease. (Parsons Affidavit ¶ 36).

In <u>Medicine Shoppe</u>, the Court stated:

> Chemical Design [v. Am. Standard, Inc., 847 S.W.2d 488, 491 (Mo.Ct.App. 1993)] establishes that under Missouri law, transfer of all assets is a sufficient condition to invoke the general rule and its exceptions; however, the opinion is silent on whether transfer of all assets is a necessary condition. There appear to be no Missouri cases addressing the question of whether successor liability may attach to a successor that acquires substantially all, but less than the totality, of its predecessor's assets. The majority rule in other jurisdictions requires only "a transfer or sale of all, or substantially all, [of the predecessors corporation's assets]." Grand Labs v. Midcon Labs, 32 F.3d 1277, 1281 n.5 (8th Cir. 1994)(citations omitted).

Id. at 803. In Medicine Shoppe, the defendant's father entered into a license agreement with Medicine Shoppe authorizing him to operate a pharmacy for a term of twenty years. Shortly after entering into the license agreement, the defendant's father, assigned the license agreement to Cape Fear. Cape Fear operated the pharmacy for twenty years and renewed the license for another ten year period. The defendant then took over operation of the pharmacy and became the sole shareholder of Cape Fear in 1998 and acquired sole ownership of the property from her father in 1999. In May 2002, Medicine Shoppe informed defendant that it believed Cape Fear had under reported its revenues and owed approximately $300,000 in unpaid license fees. Soon thereafter, the defendant incorporated Pill Dr., acquired new permits, repackaged and separated Cape Fear inventory, removed Cape Fear's office equipment and furnishings and purchased new office equipment and furnishings. The defendant began operating a pharmacy at the same location as the Cape Fear pharmacy was located and changed the name to "Hope Mills Drug." Defendant provided patients with a prescription transfer form which stated: "Due to unforseen circumstances, this pharmacy will no longer be run as a 'Medicine Shoppe'. We are changing our name to 'Hope Mills Drug'. You may expect the same care and treatment from our same staff. Only the name has changed to

7

protect the innocent." Id. at 802. Cape Fear eventually filed bankruptcy. After the bankruptcy, defendant and Pill Dr. operated the pharmacy under the new name but used the same phone number, the same customer base and the same employees. Defendant was the president and sole owner of Cape Fear and she is the president and sole owner of Pill Dr.

The Court in that case found that even though the defendant had separated and stored some of Cape Fear's inventory of drugs, office equipment and other fixtures in the pharmacy's store room, that "'a substantial amount of Cape Fear's assets and business were transferred to Pill Dr., including the patient files, store location, and store furnishings'." Id. at 804. The district court also found that Pill Dr. began operations in the same location, with the same phone number, employees, and pharmacist-manager, and invited Cape Fear's customers to transfer their prescriptions. As in the instant case, the defendants argued that Cape Fear had no leasehold or other enforceable interest in the property. However, the district court found that the goodwill developed by a pharmacy operating in the same location for more than twenty-five years is likely to be a substantial part of the value of the pharmacy. The Eighth Circuit then analyzed whether the five factors discussed in Roper Elec., 60 S.W.3d 708, 711-13, applied. Finding that all five factors weighed in favor of finding that Pill Dr. was the mere continuation of Cape Fear, the Eighth Circuit concluded that the district court did not err in determining that Pill Dr. could be held liable as Cape Fear's successor in interest.

In the instant case, the Court likewise finds that there has been a substantial transfer of assets and the five Roper factors have also been met. As in the Medicine Shoppe case, even though there was no formal sale agreement between the parties,

8

New Vision assumed the operation of the nursing home after Rocky Ridge ceased being the operator. After assuming control, New Vision continued operation of the nursing home, using the same name, the same facility, caring for the same patients, employing the same staff and the same Administrator. Defendants argue that Rocky Ridge had negative good will and that there was no value to the business, as the assets exceeded the liabilities. However, these are only Ms. Parson's assertions and are not based on any valuation of the business conducted at the time of the transfer. These same assets were then transferred to C.P. in January 2005, when C.P. Care Associates became the new operator. Again, defendants deny that they purchased the business of New Vision, and instead state that C.P. entered into a lease for the building and equipment with New Vision on January 1, 2005. However, the same assets - the patient records, the facility name, the goodwill were transferred to C.P. Therefore, the Court finds that there was a transfer of substantially all of the assets from Rocky Ridge Manor Inc. to New Vision and from New Vision to C.P. Care Associates, LLC. The Court will next analyze whether the five <u>Roper Electric</u> factors apply.

As to the first factor, there is a common identity of officers, directors and shareholders. Cheryl Parsons and George Mathes were shareholders of Rocky Ridge Manor, Inc. and New Vision on September 1, 2004. Cheryl Parsons served as the president and secretary of both New Vision and Rocky Ridge, while George Mathes served as the vice-president and treasurer for both entities. C.P. is a limited liability company and Cheryl Parsons is the owner of 100% of the units. New Vision and Rocky Ridge were Sub-S corporations and Cheryl Parsons was one of the shareholders and officers of each of these entities. As to the second factor, Rocky Ridge and New Vision

9

used the same incorporators. C.P. was incorporated by Jackie Barrow. The third factor is whether the business operations were identical. The parties do not dispute that the business of each of the three entities is exactly the same - operation of a nursing home. The fourth factor is whether the transferee uses the same trucks, equipment, labor force, supervisors and name of the transferor. There also is no dispute that the entities have all continued to operate out of the same facility, use the same name - Rocky Ridge Manor, employ the same staff and the same administrator. The last factor is whether notice of the transfer was given to employees and customers. As has been discussed previously, notice was given both when the transfer was made to New Vision on September 24, 2004 and then again when the transfer was made to C.P. Care Associates, LLC on January 1, 2005. (Exhibits E & H to Parson's Affidavit).

Thus, the Court finds that all five factors weigh in favor of finding that New Vision was a continuation of Rocky Ridge Manor, Inc. and that C.P. Care Associates, LLC was the mere continuation of New Vision. Accordingly, the Court finds that pursuant to the Corporate Continuation Doctrine, SunDance may enforce the Consent Judgment against New Vision and C.P. Care Associates, LLC. SunDance also argues that it is entitled to invalidate the fraudulent transfer of assets pursuant to the Fraudulent Transfers Doctrine. However, as the Court has determined that the defendants are liable under the Corporate Continuation Doctrine, the Court finds it is unnecessary to address this argument.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** SunDance's Motion for

Summary Judgment (Doc.# 46) and **DENIES** Defendant's Motion for Summary Judgment (Doc. # 77). All other pending motions are hereby **DENIED** as **MOOT**.

Date:  September 29, 2006          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                  Fernando J. Gaitan, Jr.
                                        United States District Judge