**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| SUNDANCE REHABILITATION, CORPORATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 04-3571-CV-S-FJG |
| NEW VISION CARE ASSOCIATES II, INC. ) and C.P. CARE ASSOCIATES, LLC., ) ) | |
| Defendants. ) | |

## ORDER

Currently pending before the Court is plaintiff's Motion for Summary Judgment (Doc. # 143) and plaintiff's Motion to Strike Defendant's Suggestions in Opposition (Doc. # 148).

### I. BACKGROUND

SunDance provided therapy services for the residents and patients at Rocky Ridge nursing home. The services were provided in 2001 and 2002. Rocky Ridge then sought Medicare reimbursement for these services. SunDance argues that Rocky Ridge failed to pay SunDance the amounts that it was reimbursed from Medicare. On January 21, 2004, SunDance filed suit against Rocky Ridge and New Vision alleging breach of contract, quantum meruit and suit on account for failure to pay for the therapy services provided. This lawsuit will be referred to as "SunDance I."

The parties entered into a settlement. SunDance agreed to dismiss New Vision because Rocky Ridge represented that New Vision had no involvement in the operation of the nursing home and rather New Vision's only connection was through its ownership

and lease of the land and building. Based on these representations, SunDance agreed to dismiss New Vision. The parties filed a Stipulation of Dismissal and a Joint Motion for Consent Judgment on June18, 2004. On July 21, 2004, the Court entered a Clerk's Order of Dismissal and dismissed New Vision with prejudice. On July 22, 2004, the Court entered a Consent Judgment in favor of SunDance and against defendant Rocky Ridge.

On August 2, 2004, Rocky Ridge requested that SunDance forebear enforcing its judgment for ninety days so that Rocky Ridge could restructure its debt and operations. SunDance agreed to forebear collecting on its debt only if Rocky Ridge made monthly payments of $2,500.00 for three months and Rocky Ridge would enter into good faith discussions to establish a payment plan after ninety days had expired. Rocky Ridge made three payments, however after three months had passed, Rocky Ridge announced that it had shut down its operations and would not make any more payments or engage in any payment plan discussions. SunDance alleges that after Rocky Ridge shut down, its assets and value as an ongoing business operation were fraudulently transferred to New Vision without consideration. SunDance argues that New Vision siphoned off Rocky Ridge's assets and business operations without paying any consideration and left Rocky Ridge without any assets to pay its obligations. SunDance alleges that New Vision took over the business operations, operates the nursing home in the same location and uses the same business name. On December 22, 2004, after attempts to resolve the dispute failed, SunDance filed suit against New Vision alleging that New Vision was liable under the corporate continuation doctrine for operating the exact same business. SunDance also alleges that New Vision fraudulently transferred

2

assets. This suit will be referred to as "SunDance II." SunDance alleges that in furtherance of the scheme, New Vision and C.P. Care Associates, LLC ("C.P."), through their common owner, Cheryl Parsons, fraudulently transferred the same assets and business operations previously owned by Rocky Ridge and New Vision to C.P. after the SunDance II lawsuit was filed. SunDance alleges that pursuant to the Corporate Continuation doctrine and the Fraudulent Transfers Doctrine, it is entitled to invalidate the fraudulent transfer of assets and/or enforce the Consent Judgment against New Vision and C.P. On September 29, 2006, the Court granted SunDance's motion for summary judgment and found that New Vision was a continuation of Rocky Ridge Manor, Inc. and that C.P. Care Associates, LLC was the mere continuation of New Vision. Thus, the Court found that pursuant to the Corporate Continuation Doctrine, SunDance could enforce the Consent Judgment against New Vision and C.P. Care Associates LLC. As the Court determined that the defendants were liable under the Corporate Continuation Doctrine, the Court did not reach the issue of whether SunDance was entitled to invalidate the transfer of assets pursuant to the Fraudulent Transfers Doctrine. On October 10, 2006, SunDance filed a Motion to Preserve Trial Date. SunDance wished to preserve the trial date in order to adjudicate its claim to pierce the corporate veil of defendants New Vision Care and C.P. Care Associates and to hold Cheryl Parsons personally liable for the judgment entered against those entities. This issue has not been addressed in SunDance's previously filed summary judgment motion because at the time Cheryl Parsons had not yet named as a defendant. On October 11, 2006, the Court directed SunDance to file a motion addressing this issue. The Court has now reviewed the parties' briefs and hereby rules as follows.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

**A. Motion to Strike Defendant's Suggestions in Opposition**

SunDance moves to strike Parson's Suggestions in Opposition because the Suggestions were filed out of time and far exceeded the maximum number of pages allowed. In the October 11, 2006 Order, the Court required SunDance to file its Motion for Summary Judgment against Parsons on or before October 30, 2006. The Order stated that Parsons was to file her Suggestions in Opposition by November 30, 2006. Parsons did not file her Suggestions in Opposition until December 4, 2006. Parsons

4

states that she was unaware of the earlier date. The Court believes that this error may have occurred due to the automatic reply deadlines which are generated by the CM/ECF system. The automatic reply deadline states that suggestions in opposition are due on or before December 4, 2006 unless otherwise directed by the Court. In this case, the Court did provide an alternative date. However, the Court does not find that this delay was so lengthy as to prejudice plaintiff. Additionally, the Court notes that if plaintiff felt sufficiently pressed for time, an extension of time could have been filed. Instead, plaintiff filed its Reply Suggestions one day before the deadline required by the Court.

SunDance also complains that Parsons' Suggestions in Opposition greatly exceeded the page limitation. Exclusive of the Statement of Facts, Parson's Suggestions in Opposition numbered twenty-seven pages. This is twelve pages over the limit provided by the local rules. Parsons' counsel now moves the Court to grant her leave to exceed the page limitation and apologizes for not seeking this leave in advance of filing the motion. Parsons' counsel states that the response grew so lengthy because it was an impassioned plea and an attempt to make sure that the Court understood all the law and arguments before ruling on this issue. Counsel is advised that often times an argument is more persuasive if it is stated concisely. The Court did review Parson's forty-two page response, but believes that many of the arguments could have been condensed or stated in a more concise manner. Particularly, since SunDance's Suggestions in Support were only nine pages in length, which included the Statement of Facts. Parsons' counsel is reminded that over length pleadings will not be permitted in the future and that she should always seek leave in advance before exceeding the page limitations. Accordingly, the Court therefore **DENIES** SunDance's Motion to Strike

5

Defendant's Suggestions in Opposition to the Motion for Summary Judgment (Doc. # 148).

**B. Plaintiff's Motion for Summary Judgment - Piercing the Corporate Veil**

In <u>Mobius Management Systems, Inc. v. West Physician Search, L.L.C.</u>, 175 S.W.3d 186 (Mo.App. 2005), the Court stated:

> In some circumstances, a court may disregard a corporate entity and hold its owners personally liable for corporate debts. . . . In order to pierce the corporate veil, the plaintiff must first show control - not mere majority or stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will or existence of its own. . . . In other words, the plaintiff must show that the corporation is the *alter ego* of the defendant.
> . . .
> Second the plaintiff must show a breach of duty - that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights . . . It is not necessary, however, to show actual fraud.
> . . .
> Finally, the plaintiff must show that the control and breach of duty proximately caused the injury or unjust loss.

<u>Id</u>. at 188 - 189 (internal citations and quotations omitted).

SunDance argues that there is no question that Parsons dominated all three corporate entities involved in this action. Parsons admits this allegation and states that she was the President of a two-shareholder close corporation and the Manager of a single member limited liability company. However, Parsons states that the law, the Articles, the By-laws, the Operating Agreement and the Minutes and Resolutions all provided the authority under which she acted for these companies. Thus, the Court finds that there is no dispute regarding this factor.

Secondly, SunDance argues that Parsons used Rocky Ridge, New Vision and C.P. for an improper purpose. SunDance states that Parsons, as President of Rocky

6

Ridge, represented that it would pay the unsecured debt owed and agreed to enter into a Consent Judgment. After Rocky Ridge became defunct, SunDance argues that the remaining entities were nothing more than a continuation of Rocky Ridge. Thus, SunDance argues that Parsons used her position for an improper purpose - to avoid having to pay Rocky Ridge's debts to SunDance.

Parsons makes many arguments in opposition. Some of these arguments directly address the piercing the corporate veil claim while many do not. However, as this is the only issue which is presently before the Court, the Court will not address the other points raised in Parsons' Suggestions in Opposition. Parsons argues that Rocky Ridge was facing severe financial difficulty and realized that action needed to be taken. Parsons states that Rocky Ridge received a compromise offer from the IRS which would relieve the company of some debt and also leave funds available to pay creditors. Thus, Parsons states that the shareholders and Board of Directors felt this was a better option than having Rocky Ridge declare bankruptcy. Parsons states that SunDance was aware of the severe financial difficulties that Rocky Ridge was facing when it agreed to the consent judgment solely from Rocky Ridge. Following the cessation of operations by Rocky Ridge, Parsons states that two major operators of nursing homes in Missouri were approached about leasing the facility and operating the nursing home, but they both declined. Rather than closing the nursing home, Parsons states that the decision was made to have New Vision operate the facility on a temporary basis until a new operator could be located. In January 2005, C.P. Care was formed and began operating the facility and has continued operating the facility since that time.

SunDance in its Reply Suggestions states:

while the Court never reached the question of whether a fraudulent

> transfer was perpetrated, the Court did determine that the actions directed by Parsons resulted in a substantial transfer of assets from Rocky Ridge, the party against whom the Consent Judgment was directed, to other entities. . . . Consequently, Rocky Ridge was left an insolvent and defunct corporation. As such, SunDance suffered an injustice in that Parsons' actions left it with no viable party to satisfy the debts from the Consent Judgment. Such transfers for the purpose of avoiding creditors are unjust and provokes piercing of the corporate veil.

(SunDance's Reply Suggestions, p. 5).

In the instant case, the Court does not find that SunDance has satisfied the second or third elements necessary to pierce the corporate veil and hold Cheryl Parsons personally liable. As noted above, the law requires a showing that "this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights." Mobius, 175 S.W.3d at 188. The Court does not find that SunDance has shown that Parsons used her control to commit a dishonest or unjust act. The Court previously found that New Vision was a continuation of Rocky Ridge Manor, Inc. and that C.P. Care Associates LLC was a continuation of New Vision. However, the criteria necessary to satisfy the corporate continuation doctrine is significantly different from the test necessary to pierce the corporate veil.

### III. CONCLUSION

Accordingly, the Court does not find that SunDance has met the necessary

8

Case 6:04-cv-03571-FJG   Document 153   Filed 03/05/07   Page 8 of 9

criteria to pierce the corporate veil and therefore **DENIES** SunDance's Motion for

Summary Judgment (Doc. # 143).


Date: 3/5/07                                    **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                                           Chief United States District Judge